UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


UNITED STATES OF AMERICA                                    GOVERNMENT

V.                              CRIMINAL ACTION NO: 1:16CR10

ROBERT E. SIMMONS                                          DEFENDANT


**TRANSCRIPT OF PLEA HEARING**

BEFORE HONORABLE HALIL S. OZERDEN
UNITED STATES DISTRICT JUDGE


FEBRUARY 18, 2016
GULFPORT, MISSISSIPPI


COURT REPORTER:

TERI B. NORTON, RMR, FCRR, RDR
2012 15TH STREET, SUITE 403
GULFPORT, MISSISSIPPI 39501
(228) 563-1748

APPEARANCES:

REPRESENTING THE GOVERNMENT:

      JAY GOLDEN, ESQUIRE
      OFFICE OF THE UNITED STATES ATTORNEY
      1575 20TH AVENUE
      GULFPORT, MISSISSIPPI 39501

REPRESENTING THE DEFENDANT:

      K. C. HIGHTOWER, ESQUIRE
      BALCH & BINGHAM
      1310 25TH AVENUE
      GULFPORT, MISSISSIPPI 39501

1    **THE COURT:**  We are here this afternoon in case number

2  1:16cr10, United States versus Robert Simmons, scheduled for a

3  change of plea.  Would counsel please make their appearances

4  for the record?

5    **MR. GOLDEN:**  Your Honor, Jay Golden on behalf of the

6  government.  And I also have at the table with me FBI agents

7  Molly Blythe and Tye Breedlove, if the Court please.

8    **THE COURT:**  Good afternoon.

9    **MR. HIGHTOWER:**  Good afternoon, Your Honor.  K. C.

10  Hightower on behalf of Robert Simmons.  Mr. Simmons is present

11  with me at counsel table today.

12    **THE COURT:**  Good afternoon, Mr. Hightower.

13    **MR. HIGHTOWER:**  Good afternoon, Judge.

14    **THE COURT:**  Mr. Golden, pursuant to the Crime Victims

15  Rights Act, are there any victims of this offense?

16    **MR. GOLDEN:**  Just the government in this case, Your

17  Honor.

18    **THE COURT:**  All right.  Do we have the original

19  executed copies of the plea documents?

20    **MR. HIGHTOWER:**  Your Honor, we -- the answer to that

21  question is yes.  Mr. Simmons and I executed the documents back

22  in December, and we have those.  And then Mr. Golden presented

23  me with a current set that he represents are identical, and he

24  has already executed those.  So that the date matches the

25  hearing, we will just sign them again, if that's okay.

1    **THE COURT:**  That's fine.

2    **MR. GOLDEN:**  For the record, the original didn't

3    contain the cause number because we needed it before we filed

4    the information.

5    **THE COURT:**  But in other respects, it is identical?

6    **MR. GOLDEN:**  It is.

7    **THE COURT:**  All right.

8    **MR. HIGHTOWER:**  The documents have been executed,

9    Your Honor.

10   **THE COURT:**  All right.  If you will approach, Mr.

11   Hightower, and hand those to the court security officer,

12   please.

13        All right.  I've reviewed the plea agreement and the plea

14   supplement.  They've been executed by counsel for the

15   government, as well as counsel for the defendant.  At this

16   time, Mr. Hightower, if you and your client would approach the

17   podium, I will ask him to raise his right hand, take the oath

18   and be sworn in, and we will get started.

19        (DEFENDANT SWORN).

20   **THE COURT:**  Sir, would you please -- you can put your

21   hand down.  Would you please state your full name for the

22   record?

23   **THE DEFENDANT:**  Robert Earl Simmons.

24   **THE COURT:**  Mr. Simmons, do you understand that you

25   are now under oath and that if you answer any of my questions

here today falsely, your answers may later be used against you in another prosecution for perjury or making a false statement. Do you understand that, sir?

**THE DEFENDANT:**  I do, Your Honor.

**THE COURT:**  Are you able to read, speak and understand the English language?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  And are you a citizen of the United States?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  If at any point this afternoon you do not understand something I say or a question I ask, please let me know.  I'm happy to repeat myself.  Also, if at any point you would like to stop and confer with your attorney, I'm happy to let you do that as well.  Just let me know that.  Do you understand all of that, sir?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  The first thing I have to do this afternoon is establish what we refer to as your competence to enter a plea.  That means I need to ask you a few questions to establish that what you are doing here today is a knowing and a voluntary act and that you understand what it is you are doing. So I will begin with a few of those questions.

How old are you, sir?

**THE DEFENDANT:**  Sixty years old, Your Honor.

1      **THE COURT:**  And how far did you go in school?

2      **THE DEFENDANT:**  To the graduate degree level.

3      **THE COURT:**  And you are able to read and write,

4  correct?

5      **THE DEFENDANT:**  Yes, Your Honor.

6      **THE COURT:**  Have you been treated recently for any

7  mental illnesses or addictions to alcohol or narcotic drugs of

8  any kind?

9      **THE DEFENDANT:**  No, Your Honor.

10     **THE COURT:**  Have you ever been treated for any mental

11  illnesses or addictions to alcohol or narcotic drugs of any

12  kind?

13     **THE DEFENDANT:**  No, Your Honor.

14     **THE COURT:**  As you stand here today, are you

15  currently under the influence of any drug, alcoholic beverage,

16  prescription medication or any other substance that would

17  affect your ability to understand what is taking place here?

18     **THE DEFENDANT:**  No, Your Honor.

19     **THE COURT:**  Are you capable of consulting with your

20  attorney and understanding what it is he is telling you?

21     **THE DEFENDANT:**  Yes, Your Honor.

22     **THE COURT:**  Do you understand why we are here and

23  what is happening?

24     **THE DEFENDANT:**  Yes, Your Honor.

25     **THE COURT:**  And do you understand the seriousness of

1  these proceedings?

2  **THE DEFENDANT:**  Yes, Your Honor.

3  **THE COURT:**  Do you understand that the purpose of

4  your appearance this afternoon is to enter a plea of guilty to

5  the one-count bill of information?  Do you understand that?

6  **THE DEFENDANT:**  Yes, Your Honor.

7  **THE COURT:**  Mr. Hightower, have you met with your

8  client?

9  **MR. HIGHTOWER:**  Yes, sir.

10  **THE COURT:**  In your opinion, is he capable of

11  understanding these proceedings and your advice?

12  **MR. HIGHTOWER:**  Without a doubt, Your Honor.

13  **THE COURT:**  Is there any question in your mind about

14  his competence to enter a plea?

15  **MR. HIGHTOWER:**  No, Your Honor.

16  **THE COURT:**  Mr. Golden, is the government aware of

17  any issues with respect to Mr. Simmons' competence to enter a

18  plea?

19  **MR. GOLDEN:**  No, Your Honor.

20  **THE COURT:**  Mr. Simmons, the first thing I have to

21  discuss with you before we begin the actual plea colloquy is

22  your willingness or desire to waive or give up your right to

23  grand jury presentment and indictment.  You may have already

24  discussed this with the Magistrate Judge, but I need to review

25  it with you as well.

1    Now, no person under our system of justice can be charged
2    with a felony offense unless a grand jury first hears evidence
3    and based upon that evidence decides that there is probable
4    cause to believe that a crime has been committed and that you
5    committed that crime.  You can, if you wish, waive or give up
6    the right to grand jury presentment and indictment and permit a
7    charge to be brought against you by way of an information,
8    which is what has occurred in your case.

9    If you were to decide that you did not wish to waive grand
10   jury presentment and indictment, there is nothing that would
11   prevent the government from presenting your case to the grand
12   jury and seeking an indictment.

13   The grand jury is a group of people not less than 16 and
14   not more than 23, and at least 12 of those people, after
15   hearing evidence, would have to agree that based upon that
16   evidence, there is probable cause to believe that a crime has
17   been committed and that you committed that crime before you
18   could be indicted.

19   No one can presume to know what a grand jury will do in
20   any particular case.  Their proceedings are secret.  Their
21   deliberations are secret as well.  You could be indicted.  On
22   the other hand, you might not be.  But if you permit this case
23   to proceed today on the information, it will proceed just as
24   though the grand jury had actually met and just as though the
25   grand jury had actually returned an indictment.

1    Have you discussed your right to grand jury presentment

2  and indictment with your attorney, Mr. Simmons?

3         **THE DEFENDANT:**  Yes, Your Honor.

4         **THE COURT:**  Have you asked him any and all questions

5  you may have had about it?

6         **THE DEFENDANT:**  Yes, Your Honor.

7         **THE COURT:**  Did you understand his answers?

8         **THE DEFENDANT:**  Yes, Your Honor.

9         **THE COURT:**  Do you fully understand your right to

10 grand jury presentment and indictment?

11        **THE DEFENDANT:**  Yes, Your Honor.

12        **THE COURT:**  And has anyone in any way forced you or

13 threatened you or made any other kinds of promises to cause you

14 to waive your right to grand jury presentment and indictment?

15        **THE DEFENDANT:**  No, Your Honor.

16        **THE COURT:**  Mr. Hightower, have you fully counseled

17 with your client regarding his willingness to give up the right

18 to grand jury presentment and indictment?

19        **MR. HIGHTOWER:**  Yes, I have, Your Honor.

20        **THE COURT:**  Are you satisfied that he understands and

21 is voluntarily giving up that right?

22        **MR. HIGHTOWER:**  Yes, Your Honor.

23        **THE COURT:**  Did you go through this same colloquy

24 with the Magistrate Judge?

25        **MR. HIGHTOWER:**  We did, Your Honor.

1       **THE COURT:** Was there a waiver of indictment form

2  executed?

3       **MR. HIGHTOWER:** Yes, there was, Your Honor.

4       **THE COURT:** And has it been filed?

5       **MR. HIGHTOWER:** I suspect it's been filed, Your

6  Honor.

7       **THE COURT:** Mr. Simmons, based upon the rights I've

8  just described to you, do you have any questions about your

9  right to grand jury presentment and indictment?

10       **THE DEFENDANT:** No, Your Honor.

11       **THE COURT:** Is it your willingness at this time to

12  waive your right to grand jury presentment and indictment? Is

13  that what you wish to do?

14       **THE DEFENDANT:** Yes, Your Honor.

15       **THE COURT:** It is the finding of the Court that the

16  defendant, Mr. Simmons, has knowingly and voluntarily waived

17  the right to grand jury presentment and indictment, and the

18  Court will therefore proceed based upon the information here

19  this afternoon. Mr. Simmons, have you received a copy of the

20  information pending against you in this case, that is, the

21  written charges brought against you by the government?

22       **THE DEFENDANT:** Yes, Your Honor.

23       **THE COURT:** Have you had an opportunity to review the

24  information with your attorney and fully discussed the charges

25  in it with your attorney?

1      **THE DEFENDANT:**  Yes, Your Honor.

2      **THE COURT:**  Were you able to ask your attorney any

3   and all questions you may have had about the charges in the

4   information?

5      **THE DEFENDANT:**  Yes, Your Honor.

6      **THE COURT:**  Did you understand his answers?

7      **THE DEFENDANT:**  Yes, Your Honor.

8      **THE COURT:**  Has your attorney also discussed with you

9   possible defenses, if any, that you might have to these

10  charges?

11     **THE DEFENDANT:**  Yes, Your Honor.

12     **THE COURT:**  Were you able to ask your attorney any

13  and all questions you may have had about that subject?

14     **THE DEFENDANT:**  Yes, Your Honor.

15     **THE COURT:**  Did you understand his answers?

16     **THE DEFENDANT:**  Yes, Your Honor.

17     **THE COURT:**  Has your attorney also discussed with you

18  possible witnesses, if any, who could be called to testify in

19  your defense to these charges?

20     **THE DEFENDANT:**  Yes, Your Honor.

21     **THE COURT:**  Were you able to ask your attorney any

22  and all questions you may have had about that subject?

23     **THE DEFENDANT:**  Yes, Your Honor.

24     **THE COURT:**  And did you understand his answers?

25     **THE DEFENDANT:**  Yes, Your Honor.

1          **THE COURT:**  Did your attorney also review and discuss

2     with you the evidence that the government intended to produce

3     at trial to support the charges against you?

4          **THE DEFENDANT:**  Yes, Your Honor.

5          **THE COURT:**  And were you able to ask your attorney

6     any questions you may have had about that subject?

7          **THE DEFENDANT:**  Yes, Your Honor.

8          **THE COURT:**  Did you understand his answers?

9          **THE DEFENDANT:**  Yes, I did.

10          **MR. HIGHTOWER:**  Your Honor, for the record, the

11     procedural posture of this case is obviously such that there

12     has not been a formal exchange of discovery, but we have had

13     sufficient and lengthy conversations with the United States

14     Government over the last several months about the nature of the

15     proof that they would intend to place into the record, and I

16     have had those discussions with Mr. Simmons.

17          **THE COURT:**  Is that correct, Mr. Simmons?

18          **THE DEFENDANT:**  Yes, Your Honor.

19          **THE COURT:**  Have you understood all of those

20     discussions with your attorney?

21          **THE DEFENDANT:**  Yes.  Yes, Your Honor.

22          **THE COURT:**  Mr. Simmons, are you satisfied with the

23     amount of time you have been able to spend with your attorney?

24          **THE DEFENDANT:**  Yes, Your Honor.

25          **THE COURT:**  Are you satisfied with the amount of time

1    your attorney has spent working on your case?

2           **THE DEFENDANT:**  Most definitely, Your Honor.

3           **THE COURT:**  And so are you fully satisfied with the

4    counsel, representation and advice given to you in this case by

5    your attorney?

6           **THE DEFENDANT:**  Yes, Your Honor.

7           **THE COURT:**  If you have any complaints or objections

8    whatsoever regarding the services provided to you by your

9    attorney, now is the time to make those objections.  Do you

10    have any?

11           **THE DEFENDANT:**  No, Your Honor.

12           **THE COURT:**  Now, I understand your willingness to

13    plead guilty this afternoon is the result of some discussions

14    that either you or your attorney have had with the attorney for

15    the government which have resulted in these two documents, the

16    written plea agreement and plea supplement.  Is that correct?

17           **THE DEFENDANT:**  Yes, Your Honor.

18           **THE COURT:**  And is this your signature on the plea

19    agreement and the plea supplement?

20           **THE DEFENDANT:**  Yes, Your Honor.

21           **THE COURT:**  Did you have a full opportunity to read

22    and discuss the plea agreement and plea supplement with your

23    attorney before you signed those two documents?

24           **THE DEFENDANT:**  Yes, Your Honor.

25           **THE COURT:**  Were you able to ask your attorney any

1    and all questions you may have had about the plea agreement and

2    the plea supplement?

3                 **THE DEFENDANT:**  Yes, Your Honor.

4                 **THE COURT:**  Did you understand his answers?

5                 **THE DEFENDANT:**  Yes, I did, Your Honor.

6                 **THE COURT:**  Do you fully understand the terms of the

7    plea agreement and the plea supplement?

8                 **THE DEFENDANT:**  Yes, I do, Your Honor.

9                 **THE COURT:**  Mr. Hightower, do you agree that your

10   client understands the terms of the plea agreement and the plea

11   supplement?

12                **MR. HIGHTOWER:**  Yes, Your Honor.

13                **THE COURT:**  Now, at this time, I'm going to ask the

14   attorney for the government to state into the record some of

15   the key terms or highlights of your agreement with the

16   government.  I want you to listen to what he has to say because

17   when he is finished, I'm going to ask you if you understand and

18   agree with these terms.  Mr. Golden?

19                **MR. GOLDEN:**  Your Honor, if the defendant waives

20   indictment and tenders a plea of guilty to a one-count

21   information filed in this case charging the defendant with the

22   bribery under Section 666 and agrees to make restitution to all

23   victims and fully cooperates with the United States, the United

24   States Attorney's Office for the Southern District of

25   Mississippi will recommend that the Court accept his plea of

guilty and at sentencing recommend that the Court impose a
sentence within the lower 25 percent of the applicable range
under the United States Sentencing Guidelines as computed by
the Court; additionally, inform the United States Probation
Office and the Court of this agreement, the nature and extent
of the defendant's activities with respect to this case and all
other activities of the defendant which the United States
Attorney deems relevant to sentencing, including the nature and
extent of the defendant's cooperation with the U. S. Attorney
and law enforcement.

With regard to the plea agreement, Your Honor, the
defendant has agreed to a number of waivers that are contained
in paragraph eight, the right to appeal the conviction under
3742, the right to contest the conviction in any type of
post-conviction proceeding under Title 28, Section 2255, any
type -- waives any type of proceeding claiming double jeopardy
or excessive penalty as a result of any forfeiture ordered or
to be ordered in this case -- I don't believe in this case
there is any forfeiture at issue, Your Honor -- any right to
seek attorneys fees and/or costs under the Hyde Amendment, and
the defendant acknowledges that the government's position in
the instant prosecution was not vexatious, frivolous or in bad
faith.  He also waives all rights, whether asserted directly or
by a representative to request or receive from any department
or agency any records pertaining to the investigation or

1    prosecution of the case, including without limitation any

2    records that may be sought by the defendant or by the

3    defendant's representative under a FOIA request in Title 5,

4    United States Code, Section 552 or the Privacy Act of 1974.

5         The defendant also acknowledges and agrees that any

6    factual issues regarding the sentencing will be resolved by the

7    sentencing judge under a preponderance of the evidence

8    standard.  And the defendant waives any right to a jury

9    determination of these sentencing issues.  The defendant

10   further agrees that in making its sentencing decision, the

11   District Court may consider any relevant evidence without

12   regard to its admissibility under the rules of evidence

13   applicable at trial.

14        These are the highlights, Your Honor, of the waivers that

15   are present in the plea agreement and the recommendations that

16   the government would make in the plea supplement.

17             **THE COURT:**  All right.  Mr. Simmons, did you hear

18   everything the attorney for the government had to say?

19             **THE DEFENDANT:**  Yes, Your Honor.

20             **THE COURT:**  Did you understand everything he had to

21   say?

22             **THE DEFENDANT:**  Yes, I do.

23             **THE COURT:**  And do you agree with those terms?

24             **THE DEFENDANT:**  Yes, I do, Your Honor.

25             **THE COURT:**  Do you agree with those terms, Mr.

1 Hightower?

2        **MR. HIGHTOWER:** Yes, Your Honor.

3        **THE COURT:** You understand, Mr. Simmons, the things

4 he read there were just the highlights. Your complete

5 agreement with the government is controlled by all of the

6 written terms contained this these two documents, the plea

7 agreement and the plea supplement. Do you understand that?

8        **THE DEFENDANT:** Yes, I do, Your Honor.

9        **THE COURT:** Now, has anyone made any other or

10 different promises or assurances of any kind to you other than

11 those contained in the plea agreement and the plea supplement

12 in an effort to induce you to plead guilty in this case?

13        **THE DEFENDANT:** No, Your Honor.

14        **THE COURT:** Mr. Golden, is this the only formal plea

15 offer that was exchanged?

16        **MR. GOLDEN:** Yes, Your Honor.

17        **THE COURT:** Is that correct, Mr. Hightower?

18        **MR. HIGHTOWER:** Yes, Your Honor.

19        **THE COURT:** Mr. Simmons, has anyone attempted in any

20 way to force you or threaten you to plead guilty in this case?

21        **THE DEFENDANT:** No, Your Honor.

22        **THE COURT:** Are you pleading guilty of your own free

23 will because you are in fact guilty?

24        **THE DEFENDANT:** Yes, Your Honor.

25        **THE COURT:** Now, do you understand that the terms of

the plea agreement and the plea supplement are merely recommendations to the Court, that I can reject those recommendations without permitting you to withdraw your plea of guilty and then impose a sentence that is more severe than you may anticipate; do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Now, there are also some waivers contained in the plea agreement. Mr. Golden mentioned them, but I need to review them with you again to make sure you understand them. These waivers appear at paragraph eight of your plea agreement.

Do you understand that by entering into this plea agreement and pleading guilty here today, you are going to waive your right to appeal your conviction and sentence imposed in this case or the manner in which the sentence is imposed on any grounds whatsoever except for ineffective assistance of counsel claims? Do you understand that?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** You are also waiving the right to contest the conviction and sentence or the manner in which the sentence is imposed in any post-conviction proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255, except for ineffective assistance of counsel claims. Do you understand that?

**THE DEFENDANT:** Yes, I do, Your Honor.

1          **THE COURT:**  You are waiving the right to seek

2     attorney's fees or costs in this case, and you are

3     acknowledging that the government's position in this case was

4     not vexatious, frivolous or in bad faith.  Do you understand

5     that?

6          **THE DEFENDANT:**  Yes, I do, Your Honor.

7          **THE COURT:**  You are waiving all rights, whether

8     asserted directly by you or through a representative to request

9     or receive from any department or agency of the United States

10    any records pertaining to the investigation or prosecution of

11    this case.  Do you understand that?

12         **THE DEFENDANT:**  Yes, I do, Your Honor.

13         **THE COURT:**  You are also acknowledging and agreeing

14    that any factual issues regarding your sentencing will be

15    decided by the sentencing judge under a preponderance of the

16    evidence standard, which is a lower standard of evidence than

17    would apply at a jury trial.  Do you understand that?

18         **THE DEFENDANT:**  Yes, I do, Your Honor.

19         **THE COURT:**  You are also waiving any right to have a

20    jury decide any of these sentencing issues.  Do you understand

21    that?

22         **THE DEFENDANT:**  Yes, I do, Your Honor.

23         **THE COURT:**  Finally, you are agreeing that in making

24    its sentencing decision, the Court may consider any relevant

25    evidence without regard to whether that evidence would be

1 admissible under the rules of evidence that would apply at a

2 trial.  Do you understand that?

3     **THE DEFENDANT:**  Yes, I do, Your Honor.

4     **THE COURT:**  Have you read each and every one of these

5 waivers, Mr. Simmons?

6     **THE DEFENDANT:**  Yes, I have, Your Honor.

7     **THE COURT:**  Have you discussed them with your

8 attorney and asked him any questions you may have had about

9 them?

10     **THE DEFENDANT:**  Yes, I have, Your Honor.

11     **THE COURT:**  Did you understand his answers?

12     **THE DEFENDANT:**  Yes, I do, Your Honor.

13     **THE COURT:**  Do you understand the consequences of

14 these waivers?

15     **THE DEFENDANT:**  Yes, I do, Your Honor.

16     **THE COURT:**  Do you fully and completely understand

17 and knowingly and voluntarily agree to all of these waivers,

18 along with all of the other terms of the plea agreement and the

19 plea supplement?

20     **THE DEFENDANT:**  Yes, I do, Your Honor.

21     **THE COURT:**  Mr. Hightower, are you satisfied that

22 your client fully and completely understands and knowingly and

23 voluntarily agrees to all of the waiver terms along with all of

24 the other terms of the plea agreement and the plea supplement?

25     **MR. HIGHTOWER:**  Yes, Your Honor, I'm satisfied.

**THE COURT:** At this time, I will accept the plea agreement and plea supplement and direct that they be filed into the record. Further, pursuant to local Court rule, the plea supplement will be filed under seal.

Mr. Simmons, do you understand that the offense to which you are seeking to plead guilty here today is a felony offense, and that if your plea is accepted by the Court, you will be adjudged guilty of that offense, and such adjudication of guilt may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm. Do you understand that, sir?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** I'm required to inform you of the maximum possible penalties to which you would be exposed by pleading guilty to this charge. The one-count information charges you with violating Title 18, United States Code, Section 666(a)(2), bribery. If you plead guilty to this charge, the maximum possible penalties to which you would be exposed by pleading guilty would be as follows: A term of imprisonment of not more than ten years, a fine of up to $250,000, a term of supervised release of not more than three years, and a 100-dollar special assessment. Do you understand that those are the maximum possible penalties to which you would be exposed by pleading guilty to this charge?

1     **THE DEFENDANT:**  Yes, I do, Your Honor.

2     **THE COURT:**  Have you discussed them with your

3     attorney and asked him any questions you may have had about

4     them?

5     **THE DEFENDANT:**  Yes, I do, Your Honor.

6     **THE COURT:**  Did you understand his answers?

7     **THE DEFENDANT:**  Yes, I do.

8     **THE COURT:**  Mr. Hightower, are you satisfied your

9     client understands these maximums possible penalties?

10     **MR. HIGHTOWER:**  Yes, I am, Your Honor.

11     **THE COURT:**  Now, do you also understand, Mr. Simmons,

12     that a term of supervised release is or may be imposed in

13     addition to any sentence of imprisonment.  Do you understand

14     that?

15     **THE DEFENDANT:**  Yes, I do, Your Honor.

16     **THE COURT:**  And what supervised release is is a

17     period of time following your release from any term of

18     imprisonment during which your activities would be monitored

19     and supervised by the U.S. Probation Office.  Do you understand

20     that?

21     **THE DEFENDANT:**  Yes, I do, Your Honor.

22     **THE COURT:**  And do you also understand that if you

23     violate any of the conditions of your supervised release, you

24     could be subjected to imprisonment for the entire term of

25     supervised release without credit for any time you might have

1    already served on that term of supervised release.  Do you

2    understand that?

3              **THE DEFENDANT:**  Yes, I do, Your Honor.

4              **THE COURT:**  Also, if applicable, the Court may order

5    or may be required to order you to make restitution to any

6    victims of this offense.  Do you understand that?

7              **THE DEFENDANT:**  Yes, I do, Your Honor.

8              **THE COURT:**  And if the offense involved fraud or

9    other intentionally deceptive practices, the Court may also be

10   required to order you to provide notice of your conviction to

11   any victims of the offense.  Do you understand that?

12             **THE DEFENDANT:**  Yes, I do, Your Honor.

13             **THE COURT:**  And again, Mr. Golden, I understand

14   forfeiture is not an issue in this case; is that correct?

15             **MR. GOLDEN:**  That is correct.

16             **THE COURT:**  Also, for each offense, Mr. Simmons, you

17   must pay a special assessment of $100 per count, which in this

18   case, because you are pleading guilty to one count, would be

19   $100.  Do you understand that?

20             **THE DEFENDANT:**  Yes, I do, Your Honor.

21             **THE COURT:**  Do you understand all of these possible

22   consequences of your plea here today?

23             **THE DEFENDANT:**  Yes, I do, Your Honor.

24             **THE COURT:**  And have you discussed them with your

25   attorney and asked him any questions you may have had about

them?

**THE DEFENDANT:**  Yes, I have discussed it with him. Thank you.

**THE COURT:**  And you understood his answers?

**THE DEFENDANT:**  Yes, I do.

**THE COURT:**  Now, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued sentencing guidelines for judges to follow to determine the sentence in a criminal case.  Your sentence in this case will be determined by considering a combination of these sentencing guidelines which are advisory, possible authorized departures from those guidelines, and other statutory sentencing factors set forth by Congress at Title 18, United States Code, Section 3553.  Have you and your attorney talked about how the sentencing guidelines might apply to your case?

**THE DEFENDANT:**  Yes, we have, Your Honor.

**THE COURT:**  And do you understand that the Court will not be able to determine the guideline sentence range for your case until after the probation office has prepared a presentence report and you and the government have both had an opportunity to review that report and to challenge or object to the reported facts and the proposed application of the sentencing guidelines recommended by the probation officer.  Do you understand that?

**THE DEFENDANT:**  Yes, I do, Your Honor.

**THE COURT:** Do you also understand that the sentence ultimately imposed by the Court may be different from any estimate that your attorney may have given you? Do you understand that?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** Also, after your initial advisory sentencing guideline range has been determined, the Court has the authority under some circumstances to depart upward above the guideline range or downward below the guideline range, and the Court will also examine the other statutory sentencing factors found at Title 18, United States Code, Section 3553, and this could result in the imposition of a sentence that is either greater than or lesser than the advisory sentencing guideline range. Do you understand that?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** And do you also understand that the Court, in its discretion, could sentence you up to the maximum prison sentence provided by statute, which in this case is ten years. Do you understand that?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** Do you also understand that parole has been abolished, and that if you are sentenced to prison, you will not be released on parole. Do you understand that?

**THE DEFENDANT:** Could you state that again? I missed it.

1          **THE COURT:**  Parole has been abolished, and if you are

2     sentenced to prison, you will not be released on parole.  Do

3     you understand that?

4          **THE DEFENDANT:**  Yes, I understand that, Your Honor.

5          **THE COURT:**  If you have any questions about that that

6     you want to talk to your lawyer about, I will give you a break,

7     if you want to do that.

8          (Defendant confers with Mr. Hightower.)

9          **THE DEFENDANT:**  Yes, I understand, Your Honor.

10         **THE COURT:**  Okay.  All right.  Now, you are also

11     waiving some constitutional rights by pleading guilty here

12     today.  I want to review those with you as well to make sure

13     you understand them.

14         Do you understand that you have a right to plead not

15     guilty to any offense charged against you and to persist in

16     that plea?  Do you understand that, Mr. Simmons?

17         **THE DEFENDANT:**  Yes, I do, Your Honor.

18         **THE COURT:**  You would then have a right to a trial by

19     a jury.  Do you understand that?

20         **THE DEFENDANT:**  Yes, I do, Your Honor.

21         **THE COURT:**  And at that trial, you would be presumed

22     to be innocent, and the government would have to prove your

23     guilt beyond a reasonable doubt.  Do you understand that?

24         **THE DEFENDANT:**  Yes, I do, Your Honor.

25         **THE COURT:**  You would have the right to the

1  assistance of counsel for your defense at trial and at every

2  stage of the proceedings, and if necessary, the Court would

3  appoint an attorney for you.  Do you understand that?

4          **THE DEFENDANT:**  Yes, I do, Your Honor.

5          **THE COURT:**  You would have the right to see and hear

6  all of the witnesses who testify and to have them

7  cross-examined in your defense.  Do you understand that?

8          **THE DEFENDANT:**  Yes, I do, Your Honor.

9          **THE COURT:**  You would have the right to the issuance

10  of subpoenas or compulsory process to compel witnesses to

11  attend to testify in your defense.  Do you understand that?

12          **THE DEFENDANT:**  Yes, I do, Your Honor.

13          **THE COURT:**  You would have the right on your own part

14  to refuse to testify unless you voluntarily elected to do so in

15  your own defense.  Do you understand that?

16          **THE DEFENDANT:**  Yes, I do, Your Honor.

17          **THE COURT:**  And if you decided not to testify or not

18  to put on any evidence whatsoever, those facts could not be

19  used against you.  Do you understand that?

20          **THE DEFENDANT:**  Yes, I do, Your Honor.

21          **THE COURT:**  Do you further understand that by

22  entering a plea of guilty, if that plea is accepted by the

23  Court, there will not be a trial, and you will have waived or

24  given up your right to a trial, as well as all of the other

25  rights associated with a trial as I have just described them.

1  Do you understand that?

2         **THE DEFENDANT:**  Yes, I do, Your Honor.

3         **THE COURT:**  I'm required to inform you of the charge

4  to which you are seeking to plead guilty.  You are seeking to

5  plead guilty to the one-count information which charges as

6  follows:  At all times relevant to this information, the

7  Mississippi Department of Corrections, here after referred to

8  as MDOC, was a state government agency as that term is defined

9  in Section 666(d), Title 18, United States Code, which received

10  federal assistance in excess of $10,000 during each one-year

11  period between 2007 and 2014, under federal programs providing

12  federal assistance to the MDOC.  Harrison County, Mississippi

13  was a local government as that term is designed in Section

14  666(d), Title 18, United States Code, which received federal

15  assistance in excess of $10,000 during each one-year period

16  between January 1, 2005 and December 31, 2012, under federal

17  programs providing federal assistance to Harrison County,

18  Mississippi.

19        Sentinel Offender Services, LLC, hereafter referred to as

20  Sentinel, was under contract since July, 2012 with the State of

21  Mississippi's MDOC to provide services -- to provide services

22  to aid in monitoring and managing offenders sentenced to

23  probation or parole.  This monitoring contract was awarded by

24  the MDOC.

25        The defendant, Robert Simmons, was a local businessman

1    from Harrison County, Mississippi, who was paid a

2    4,000-dollar-a-month consulting fee from Sentinel.  Since

3    approximately July 2012, Simmons provided monthly payments of

4    $1,400 and no cents to the commissioner of the MDOC.  These

5    monthly payments, otherwise known as kickbacks or bribes, were

6    deposited directly into the commissioner's bank accounts.

7    Simmons would accomplish this by making the bank deposits

8    utilizing branch locations in the coastal counties of

9    Mississippi.

10           Simmons set aside approximately 30 percent of his $4,000 a

11    month consulting fee from Sentinel for taxes, and subsequently

12    split the remaining part of his fee with the commissioner of

13    the MDOC.

14           AJA Management and Technical Services, hereafter referred

15    to as AJA, was under contract for a period of 18 months to

16    provide construction management services to the MDOC for the

17    expansion of the East Mississippi Correctional Facility and the

18    Walnut Grove Youth Correctional Facility.  Throughout this

19    18-month period of time, Simmons received a monthly consulting

20    fee from AJA of $10,000.  Every month a portion of Simmons'

21    consulting fee was paid to the commissioner of the MDOC.  A

22    company obtained a contract to perform work on the East

23    Mississippi Correctional Facility and the Walnut Grove Youth

24    Correctional Facility.  The company paid Simmons a consulting

25    fee for a period of ten months.  Simmons paid the commissioner

1  of the MDOC a portion of Simmons' consulting fee on

2  approximately 20 occasions during this ten-month period of

3  time.

4  From approximately 2005 through 2011, Health Assurance,

5  LLC contracted with the Harrison County Jail to provide inmate

6  medical services.  The owner of Health Assurance, LLC, paid

7  Simmons a consulting fee which at the end of the contract was

8  as high as $10,000 a month.  Throughout this period of time,

9  Simmons made payments in the amount of $2,000 and no cents a

10  month to a Harrison County supervisor for assistance provided

11  in securing the contract at the Harrison County Jail for inmate

12  medical services.

13  Throughout the relevant time period referred to in

14  paragraph one of the information, the commissioner of MDOC

15  exercised influence in the awarding of contracts with the MDOC.

16  Throughout the relevant time period referred to in paragraph

17  two, a duly elected supervisor of Harrison County, Mississippi

18  exercised influence in the awarding of contracts with Harrison

19  County, Mississippi.

20  That beginning sometime in or about 2005 and continuing

21  until at least August 26, 2014, in Harrison County, in the

22  Southern Division of the Southern District of Mississippi and

23  elsewhere, Defendant Robert Simmons did knowingly and corruptly

24  give, offer and agree to give something of value to the

25  commissioner of the MDOC with intent to influence and reward

1 the commissioner of the MDOC in connection with the business

2 transaction and series of transactions of the Mississippi

3 Department of Corrections involving something of value of

4 $5,000 or more, that is, the awarding and the retention of

5 contracts to Sentinel and AJA for various services more

6 particularly described in paragraphs three through eight.

7     That beginning sometime in or about 2005 and continuing

8 until at least 2014, in Harrison County, in the Southern

9 Division of the Southern District of Mississippi and elsewhere,

10 the Defendant Robert Simmons did knowingly and corruptly give,

11 offer and agree to give something of value to a duly elected

12 supervisor of Harrison County, Mississippi with intent to

13 influence and award the supervisor in connection with the

14 business transaction and series of transactions in Harrison

15 County, Mississippi involving something of value of $5,000 or

16 more, that is, the awarding and the retention of contracts to

17 Health Assurance, LLC, for various services more particularly

18 described at paragraph 11, all in violation of Section

19 666(a)(2), Title 18, United States Code.

20     Mr. Simmons, have you seen the information against you in

21 this case?

22         **THE DEFENDANT:** Yes, I have, Your Honor.

23         **THE COURT:** And have you read this charge to which

24 you are seeking to plead guilty?

25         **THE DEFENDANT:** Yes, I have, Your Honor.

1          **THE COURT:**  Did you have a full opportunity to

2    discuss the charge with your attorney and ask him any and all

3    questions you may have had about it?

4          **THE DEFENDANT:**  Yes, I have, Your Honor.

5          **THE COURT:**  Did you understand his answers?

6          **THE DEFENDANT:**  Yes, I did, Your Honor.

7          **THE COURT:**  Do you fully and completely understand

8    the charge against you in the one-count information?

9          **THE DEFENDANT:**  Yes, I do, Your Honor.

10          **THE COURT:**  Mr. Hightower, are you satisfied that

11   your client fully and completely understands the charge against

12   him in the information?

13          **MR. HIGHTOWER:**  Yes, I am, Your Honor.

14          **THE COURT:**  I also need to explain to you, Mr.

15   Simmons, the essential elements of the charge contained in the

16   information.  These are the things the government would have to

17   prove, and it would have to prove them beyond a reasonable

18   doubt in order for you to be found guilty.

19       The information charges you with violating Title 18,

20   United States Code, Section 666(a)(2), which makes it a crime

21   for anyone to corruptly give, offer or agree to give anything

22   of value to any person with intent to influence or reward an

23   agent of an organization or of a state, local or Indian tribal

24   government or any agency thereof and receives more than $10,000

25   in federal assistance in any one-year period in connection with

1   any business transaction or series of transactions of such

2   organization, government or agency involving anything of value

3   of $5,000 or more.

4         In order for you to be found guilty of this charge, the

5   government must prove each of the following elements beyond a

6   reasonable doubt:  First, that Christopher Epps was an agent of

7   the State of Mississippi and, more particularly, the

8   Mississippi Department of Corrections, an agency of the State

9   of Mississippi.  In addition, that a former elected supervisor

10  was an agent of Harrison County, Mississippi and served on the

11  Board of Supervisors for the county.

12        Second, that the Mississippi Department of Corrections was

13  an organization of state government that received in every

14  one-year period, including the years 2011, 2012, 2013, and

15  2014, benefits in excess of $10,000 under a federal program

16  involving a grant, contract and other forms of federal

17  assistance; that Harrison County, Mississippi is a local

18  political subdivision of the state of Mississippi that received

19  in every one-year period, including the years 2011, 2012, 2013,

20  and 2014, benefits in excess of $10,000 under a federal program

21  involving a grant, contract and other forms of federal

22  assistance.

23        Third, that the defendant, and that would be you in this

24  case, corruptly gave, offered and agreed to give money to

25  Christopher Epps and a former elected member of the Harrison

County Board of Supervisors with the intent to influence and reward them in connection with any business transaction or series of transactions, which in the case of Christopher Epps involved the Mississippi Department of Corrections, and in the case of the former elected member of the Harrison County Board of Supervisors involved the local political subdivision of the state known as Harrison County.

And, fourth, that the business transaction and series of transactions involved anything of value of $5,000 or more.

Now, the term "agent" means a person authorized to act on behalf of another person or a government, and in the case of an organization or government includes a servant or employee and a partner, director, officer, manager and representative.

The term "government agency" means a subdivision of the executive, legislative, judicial or other branch of government, including a department, independent establishment, commission, administration, authority, board and bureau, and a corporation or other legal entity established and subject to control by a government or governments for the execution of a governmental or intergovernmental program.

The term "local" means of or pertaining to a political subdivision within a state.

The term "state" includes a state of the United States, the District of Columbia and any commonwealth, territory or possession of the United States.

1    The term "in any one-year period" means a continuance

2  period that commences no earlier than 12 months before the

3  commission of the offense or that ends no later than 12 months

4  after the commission of the offense.  Such period may include

5  time both before and after the commission of the offense.

6    An act is corruptly done if it is done intentionally with

7  an unlawful purpose.  The word "value" means the face, par,

8  market value or cost price, either wholesale or retail,

9  whichever is greater.  It is not necessary to prove that a

10  defendant's conduct directly affected the federal funds

11  received by the agency under the federal program.  However,

12  there must be some connection between the criminal conduct and

13  the organization of state or local government receiving federal

14  assistance.

15    In determining whether a defendant is guilty of this

16  offense, the government cannot rely upon and the Court will not

17  consider bona fide salary, wages, fees or other compensation

18  paid or expenses paid or reimbursed in the usual course of

19  business.

20    Now, those are the essential elements of the offense

21  charged in the information.  Do you understand those, Mr.

22  Simmons?

23    **THE DEFENDANT:**  Yes, I do, Your Honor.

24    **THE COURT:**  Have you discussed them with your

25  attorney and asked him any questions you may have had about

them?

          **THE DEFENDANT:**  Yes, I have, Your Honor.

          **THE COURT:**  Did you understand his answers?

          **THE DEFENDANT:**  Yes, I do, Your Honor.

          **THE COURT:**  So do you understand what it is the government would have to prove beyond a reasonable doubt before a jury could convict you?  Do you understand that?

          **THE DEFENDANT:**  Yes, Your Honor.

          **THE COURT:**  Do you fully and completely understand the nature of the essential elements of the offense?  Do you understand those, Mr. Simmons?

          **THE DEFENDANT:**  Yes, I do, Your Honor.

          **THE COURT:**  Mr. Hightower, do you agree that your client fully and completely understands the nature of the offense, including its essential elements?

          **MR. HIGHTOWER:**  Yes, I do, Your Honor.

          **THE COURT:**  At this time, Mr. Simmons, I'm going to ask the attorney for the government to state into the record those facts that the government would be prepared to prove if this case went to trial.  I want you to listen carefully to what he has to say, because when he is finished, I'm going to ask you if you understand and agree with these facts.  Mr. Golden.

          **MR. GOLDEN:**  Your Honor, if the case were to go to trial, the government would expect to demonstrate beyond a

1  reasonable doubt that the defendant, Robert Simmons, in
2  Harrison County in the Southern Division of the Southern
3  District of Mississippi and elsewhere, beginning in 2005 and
4  continuing through at least August 26, 2014, violated Title 18,
5  Section 666(a)(2).  Specifically, between 2012 and August 2014,
6  Mr. Simmons was paid $4,000 a month as a consultant for
7  Sentinel Offender Services, LLC -- Sentinel.
8      Since 2012, Sentinel was under contract with the
9  Mississippi Department of Corrections to provide services to
10  aid in the monitoring and managing of offenders sentenced to
11  probation or parole.  Mr. Simmons deposited a portion of his
12  monthly pay, a kickback of $1,400, directly into bank accounts
13  of Christopher Epps, the commissioner of the MDOC at bank
14  branch locations along the Mississippi Gulf Coast.  Upon
15  depositing the money into Epps' account, Mr. Simmons would
16  typically send a text message which stated, "Count it 14 done"
17  or a variation of this message.
18      AJA Management and Technical Services, or AJA, provided
19  construction management services to the MDOC for the
20  construction of the 40 million-dollar expansion to the East
21  Mississippi Correctional Facility and a 40 million-dollar
22  expansion to Walnut Grove Youth Correctional Facility.
23  Throughout the 18-month period of construction, Mr. Simmons
24  received a monthly consulting fee from AJA of $10,000.  Every
25  month a portion of Mr. Simmons' consulting fee was paid to the

1   commissioner of the MDOC.

2        From approximately 2005 through 2011, Health Assurance,

3   LLC, contracted with the Harrison County Jail to provide inmate

4   medical services.  The owner of Health Assurance, LLC paid Mr.

5   Simmons a consulting fee which at the end of the contract was

6   as high as 10,000 a month.  Throughout this period of time, Mr.

7   Simmons made payments in the amount of $2,000 a month to a

8   Harrison County supervisor for assistance in providing and

9   securing the contract at the Harrison County Jail for inmate

10  medical services.

11       Throughout the relevant time period, the commissioner of

12  the MDOC exercised influence in the awarding of contracts with

13  the MDOC.  In return for these contracts and in order to secure

14  future contracts and favors, Mr. Simmons began paying

15  Commissioner Epps.

16       In July 2012, Sentinel was competing against 3M for the

17  MDOC contract.  Mr. Epps, the commissioner of the MDOC met with

18  a codefendant or someone who was charged in Jackson by the name

19  of Cecil McCrory, who was the consultant for 3M at that time.

20  Mr. Epps told Mr. McCrory that McCrory had made enough money

21  and that Epps felt obliged to help Simmons by awarding the

22  contract to Sentinel.

23       During the time period of the conspiracy, McCrory, in

24  addition to Mr. Simmons, also gave cash bribes and kickbacks to

25  Commissioner Epps which Commissioner Epps put in his safe at

home until he was ready to deposit such cash into various banks and investment accounts. Mr. Epps electronically transferred money between his commingled accounts and his investment account in order to conceal and disguise the bribes and conduct other financial transactions with the bribe proceeds by structuring the purchase of cashier's checks and depositing those checks into his Edward Jones investment account or toward the payment of his Mercedes Benzes.

In summary, Mr. Simmons paid bribes and kickbacks to a former Harrison County supervisor and to the Commissioner of the Mississippi Department of Corrections within the relevant period of the indictment. In exchange, Robert Simmons benefited as a consultant for AJA and Sentinel. He also benefited as a consultant for Health Assurance, LLC.

All of this would be proven by the testimony of others involved in the activity, such as Mr. Epps, such as other individuals mentioned in this factual basis.

In exchange, we would also put forth that the FBI agents in this case, Tye Breedlove and Molly Blythe, would testify, along with others. The government would introduce video and audio recordings, records obtained through the grand jury process, conversations captured on a court-ordered wire tap known as a T3, and other physical and documentary evidence.

Mr. Simmons said that he knew that it was wrong to deposit the kickback money into Epps' account but believed it was the

1   cost of doing business in Mississippi.

2       Importantly, the government would also introduce documents

3   and offer testimony that both Harrison County and the

4   Mississippi Department of Corrections received more than

5   $10,000 during each one-year period beginning in 2008 and

6   continuing through 2014.  Once Mr. Simmons was confronted with

7   the evidence against him, he cooperated with authorities by

8   outlining the totality of his criminal conduct and by

9   participating, when it was possible for him to do so, in

10  efforts by law enforcement to document the illegal activities

11  of others abusing the public trust.  That's basically what the

12  government would prove if the case were to go to trial.

13      **THE COURT:**  All right.  And just if you can,

14  elaborate a little further, Mr. Golden, on -- to establish that

15  the transaction or series of transactions involved anything of

16  value of $5,000 or more, what would be the government's method

17  of establishing that?

18      **MR. GOLDEN:**  The information in the indictment

19  reflects that these are substantial amounts of money that were

20  involved in the contract, well into the millions of dollars

21  with regard to each one of those.  That's what I mean by the

22  government would introduce a number of documents and also the

23  testimony of witnesses with regard to that element of the

24  crime.

25      **THE COURT:**  Okay.  All right.  Mr. Simmons, did you

hear everything the attorney for the government had to say?

**THE DEFENDANT:** Yes, I did, Your Honor.

**THE COURT:** Did you understand everything he had to say?

**THE DEFENDANT:** Yes, I do, Your Honor.

**THE COURT:** Do you agree with those facts?

**THE DEFENDANT:** Yes, I do.

**THE COURT:** And is that in fact what happened in this case?

**THE DEFENDANT:** Yes, it is, Your Honor.

**THE COURT:** Mr. Simmons, in a moment, I'm going to ask you for your plea to the one-count information, whether it is guilty or not guilty. Before I do that, is there anything that you have not understood or that you would like to discuss further with your attorney?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. Mr. Simmons, how do you now plead to the charge contained in the one-count bill of information; guilty or not guilty?

**THE DEFENDANT:** Guilty, Your Honor.

**THE COURT:** It is the finding of the Court in the case of United States versus Robert Simmons, that having viewed the defendant in court and considered his demeanor and responses, the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the

1    nature of the charges and the consequences of the plea, and

2    that the plea of guilty to the one-count bill of information is

3    a knowing and voluntary plea supported by an independent basis

4    in fact containing each of the essential elements of the

5    offense.

6        The plea is therefore accepted, and the defendant is now

7    adjudged guilty of that offense.  Mr. Simmons, as I mentioned,

8    a written presentence report will need to be prepared by the

9    probation office to assist the Court in sentencing.  You will

10    be asked to give information to the probation officer for this

11    report.  It is very important that you provide complete and

12    truthful answers to the probation officer when you meet with

13    him or her.  You may have your attorney present with you if you

14    wish when you meet with the probation officer, and you and your

15    attorney will be allowed to read the presentence report and

16    file any objections you may have to the presentence report

17    before the sentencing hearing.

18        You and your attorney will also have an opportunity to

19    speak on your behalf at the sentencing hearing before the Court

20    imposes any sentence.  So when we finish here today, I will

21    refer you to Mr. Becker with the probation office to begin that

22    process.

23        Sentencing in this case will be on Thursday, May 26th,

24    2016 at 9:00 a.m. here in this courtroom.  Thursday, May 26th,

25    2016, at 9:00 a.m. here in this courtroom.

1      And one thing I want to remind you of, Mr. Simmons, you

2  have now been adjudged guilty of a felony.  One consequence of

3  that is that you no longer have the right to possess a firearm

4  of any kind for any purpose.  Do you understand that, sir?

5          **THE DEFENDANT:**  Yes, I do, Your Honor.

6          **THE COURT:**  I understand the defendant has been on

7  bond pending this proceeding.  Is there any objection to him

8  remaining on his current conditions of release?

9          **MR. GOLDEN:**  No, Your Honor.

10         **MR. HIGHTOWER:**  That is correct, Your Honor.  A bond

11 was set previously in front of Judge Gargiulo, and we would

12 obviously ask that he remain free on bond.

13         **THE COURT:**  Is probation aware of any issues that

14 would prevent him from remaining on his current conditions of

15 release?

16         **PROBATION OFFICER:**  No, Your Honor.

17         **THE COURT:**  All right.  The Court finds, based upon

18 the provisions of the Bail Reform Act, there is sufficient

19 evidence in the record for the Court to conclude that the

20 defendant is not likely to flee or pose a danger to the safety

21 of any other person or the community.  Therefore, the defendant

22 will be permitted to remain on his current conditions of

23 release pending sentencing.

24     Mr. Simmons, I want to remind you that your sentencing in

25 this case is Thursday, May 26, 2016, at 9:00 a.m..  Failure to

1   appear at the sentencing hearing as required is a criminal

2   offense for which you could be sentenced to imprisonment.  All

3   conditions of your current release remain in place and must be

4   followed completely, and the penalties for violating those

5   conditions can be severe, including incarceration.  Do you

6   understand that, sir?

7           **THE DEFENDANT:**  Yes, I do, Your Honor.

8           **THE COURT:**  Anything further at this time?

9           **MR. GOLDEN:**  No, Your Honor.

10          **MR. HIGHTOWER:**  No, Your Honor.

11          **THE COURT:**  The Court will stand in recess.  You are

12  excused.

13                          (PLEA CONCLUDED)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                           CERTIFICATE OF COURT REPORTER

4

5        I, Teri B. Norton, RMR, FCRR, RDR, Official Court

6    Reporter for the United States District Court for the Southern

7    District of Mississippi, appointed pursuant to the provisions

8    of Title 28, United States Code, Section 753, do hereby certify

9    that the foregoing is a correct transcript of the proceedings

10   reported by me using the stenotype reporting method in

11   conjunction with computer-aided transcription, and that same is

12   a true and correct transcript to the best of my ability and

13   understanding.

14       I further certify that the transcript fees and format

15   comply with those prescribed by the Court and the Judicial

16   Conference of the United States.

17

18

19

20        S/ *Teri B. Norton*
           TERI B. NORTON, RMR, FCRR, RDR

21        OFFICIAL COURT REPORTER

22

23

24

25