UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


UNITED STATES OF AMERICA                              GOVERNMENT

V.                          CRIMINAL ACTION NO: 1:16CR10

ROBERT E. SIMMONS                                       DEFENDANT


**TRANSCRIPT OF SENTENCING HEARING**

BEFORE HONORABLE HALIL S. OZERDEN
UNITED STATES DISTRICT JUDGE


SEPTEMBER 15, 2016
GULFPORT, MISSISSIPPI


COURT REPORTER:

TERI B. NORTON, RMR, FCRR, RDR
2012 15TH STREET, SUITE 403
GULFPORT, MISSISSIPPI  39501
(228) 563-1748

APPEARANCES:

REPRESENTING THE GOVERNMENT:

    JAY GOLDEN, ESQUIRE
    OFFICE OF THE UNITED STATES ATTORNEY
    1575 20TH AVENUE
    GULFPORT, MISSISSIPPI  39501

REPRESENTING THE DEFENDANT:

    K. C. HIGHTOWER, ESQUIRE
    BALCH & BINGHAM
    1310 25TH AVENUE
    GULFPORT, MISSISSIPPI  39501

1       **THE COURT:**  We are here this morning in criminal

2   matter 1:16cr10, United States versus Robert Simmons scheduled

3   for sentencing.  Would counsel please make their appearances

4   for the record?

09:11   5       **MR. GOLDEN:**  Your Honor, this is Jay Golden on behalf

6   of the United States, and with me at counsel table is Special

7   Agent Tye Breedlove with the FBI.

09:11   8       **THE COURT:**  Good morning.

09:11   9       **MR. HIGHTOWER:**  Good morning, Your Honor.  I'm K. C.

10   Hightower on behalf of Robert Simmons, who is also present with

11   me at counsel table.

09:11   12       **THE COURT:**  Good morning, Mr. Hightower.

09:11   13       **MR. HIGHTOWER:**  Good morning, Judge.

09:11   14       **THE COURT:**  Now, Mr. Golden, pursuant to the Crime

15   Victims Rights Act, are there any victims of this offense?

09:11   16       **MR. GOLDEN:**  Your Honor, there are victims.  The

17   government basically is the victim in this case, and any

18   notifications that the government was required to make it has

19   made with regard to that.

09:12   20       **THE COURT:**  Is there anyone here who is going to want

21   to speak on behalf of the victim?

09:12   22       **MR. GOLDEN:**  I'm not aware of any, Your Honor,

23   certainly not on behalf of the victim.

09:12   24       **THE COURT:**  All right.  Has the government received

25   the presentence report and had a chance to review it?

09:12   1               **MR. GOLDEN:**  Yes, Your Honor.

09:12   2               **THE COURT:**  Does the government have any objections

3   to the presentence report?

09:12   4               **MR. GOLDEN:**  No.

09:12   5               **THE COURT:**  Mr. Hightower, did you receive the

6   presentence report and any addenda and had a chance to review

7   them with your client?

09:12   8               **MR. HIGHTOWER:**  We received each of those and had a

9   chance to review and discuss each of them.

09:12   10               **THE COURT:**  Were you able to explain them to your

11   client and answer any questions he had about them.

09:12   12               **MR. HIGHTOWER:**  Yes, I was, Your Honor.

09:12   13               **THE COURT:**  Did he understand them?

09:12   14               **MR. HIGHTOWER:**  I believe he did, Your Honor.

09:12   15               **THE COURT:**  All right.  And I understand there has

16   been an objection lodged.  Is that correct?

09:12   17               **MR. HIGHTOWER:**  Yes, Your Honor.

09:12   18               **THE COURT:**  All right.  If you would, state very

19   briefly what that objection is, and then I will see if the

20   government has any evidence or argument to offer on the

21   objection.

09:12   22               **MR. HIGHTOWER:**  Your Honor, our response to the

23   presentence investigation report was I think pretty concise in

24   that we didn't take issue with anything in the report except

25   the imposition of the 18-point enhancement, we will call it,

1    for the net loss, and I know the Court has had the benefit of

2    our reading of that.  Citing as the primary basis for that, the

3    *Klein* case from the Fifth Circuit handed down I believe in

4    2008.

09:13  5        The government or United States Probation filed an

6    addendum to their report and stands by their 18-point

7    imposition and cites as its basis that an example contained

8    within a comment to the guidelines provides authority for the

9    notion that total profit, open quote, total profit, closed

10   quote, is basically a synonym for net loss or intended loss.

11   We disagree, and I guess to the extent that an example in a

12   note could be considered authority, then it should be

13   recognized as such, but I think at most, that would be

14   secondary authority.

09:14  15       We have got-- the Fifth Circuit has spoken to this issue

16   pretty clearly, and I think that a review of the *Klein* case,

17   while it does not say that you must take into consideration

18   that part of fair market value that encompasses legitimate

19   profit, a reasonable review of that case would indicate that.

20   I know that the Court has read that case, but that case, of

21   course, involved a physician who had apparently provided

22   legitimate services but had committed fraud in the coding of

23   it, and the question became how much should -- if you start

24   with the general premise that all of it is a loss, how much of

25   it should be credited and reduced by the fair market value of

1    the legitimate services provided?  And I think in that case the

2    government took the position that it would basically be the

3    wholesale cost is what the credit would be equal to, and of

4    course, that would leave a greater loss amount.

09:15    5        The defense took the position that, no, it would be

6    whatever Medicare would have paid for the medications because

7    they got the medications.  He just billed it as though he

8    administered it rather than it being administering at home.

09:15    9        I think a reasonable inference from that is that -- and I

10   think there's even a statement in there, Judge Ozerden, that

11   says it's not what the doctor would have paid for the

12   medications but what Medicare would have paid.  And so that --

13   it would include a markup.

09:15   14        The FBI is here, and to the extent that the government

15   contests it, which I don't think they will, I think the FBI

16   would indicate that these were government contracts that the

17   State of Mississippi and/or Harrison County received legitimate

18   services for and would have paid substantial sums for.  If the

19   government does not, you know, acknowledge that, then I will

20   need to probably put on some short testimony with

21   Mr. Breedlove, but I think they do.  It's just an

22   interpretation of the guidelines such that United States

23   Probation believes that any and all profit should be loss, and

24   we don't believe that's a correct interpretation.

09:16   25        I think that to put it -- to break it down, I think that

1    profit can be illegitimate if the government could demonstrate

2    that part of the profit earned was, for lack of a better term,

3    profit too much.  I think at that point there would be an

4    argument that, you know, that should not be added to the credit

5    because that's profit directly attributable to the bribe.  And

6    I really think that that's probably what the example stands to

7    mean.  I've read it, and I know that what Mr. Alexis has done

8    is not illogical.  I just think that it is inconsistent with

9    what the Fifth Circuit has said.

09:17    10        At the end of the day, these are big dollar contracts, but

11    I think the concept is the same.  If somebody paints your house

12    for a hundred dollars, it stands to reason that that's going to

13    include some profit, you know, and if everybody's house in the

14    neighborhood is getting painted for a hundred dollars, you

15    know, then the fair market value of those services is not just

16    the cost of the paint and the labor, but it's also the profit.

17    Now, if you find out that you paid $900 for your house to get

18    painted, then perhaps the $800 is profit too much.  There's

19    been no evidence provided by the United States Government that

20    any part of this profit is profit too much.

09:17    21        And I know this sounds perhaps bizarre, but I think I

22    would be remiss not to mention it.  The procurement of these

23    contracts and the circumstances under which they were procured

24    was criminal, and so the gist of my argument is not that Mr.

25    Simmons is beyond punishment.  It's that he is not -- he

1   shouldn't be subjected to the 18-point enhancement.  You could

2   have a situation where, and I think these -- I don't know that

3   these necessarily were that way, but you could have a situation

4   where contracts required bids, and the head of the agency

5   disclosed illegally to a vendor what the low bid was so that

6   his friend could bid below it and be awarded the contract.  In

7   that case, assuming the government was provided with a

8   legitimate service, not only would there not be a loss.  The

9   government would have actually saved money.  It would have been

10  an illegal contract, of course, but there would have been no

11  loss per se, assuming that the government got the benefit of

12  the contract.

09:18   13      And while this is not exactly that way, I think that the

14  logic applies.  And, you know, the magnitude of these contracts

15  is such that, you know, there's nothing to suggest, at least in

16  the record, that anything about the profit was profit too much.

17  And as such, I think that the 18-point enhancement is not

18  appropriate and that the Court should net that out of the

19  guideline calculation.

09:19   20              **THE COURT:**  All right.

09:19   21          **MR. HIGHTOWER:**  Thank you, Your Honor.

09:19   22              **THE COURT:**  Mr. Hightower, just a point of

23  clarification.  Am I correct to infer from your comments that

24  there's really no dispute about the underlying facts as they

25  are stated in the presentence report?  This is more a matter of

1    legal interpretation of the guidelines.

09:19    2                 MR. HIGHTOWER:   Yes, Your Honor.   That is our

3    position.   And, you know, if the government -- and of course,

4    the United States Probation says as much with respect to the

5    contracts.   It says we are not -- I think the term he uses is

6    inferring, whether he means inferring or implying -- that the

7    government didn't receive the services.   It's just that

8    Mr. Alexis takes the position that all of the profit ought to

9    be -- none of the profit should go towards adding to the

10   credit, and we simply disagree.   Thank you, Your Honor.

09:20    11                THE COURT:   Thank you.   Let me hear from the

12   government any argument or evidence on the objection.

09:20    13                MR. GOLDEN:   Your Honor, at this time we would not

14   intend to put on any evidence.   I do want to I think correct

15   Mr. Hightower with regard to what the government's position is.

16   We believe the addendum adequately documents and supports the

17   calculations and the loss amount, and I didn't hear, and the

18   Court sought and obtained that clarification, that he wasn't

19   arguing with the figures.   He is just simply making a legal

20   argument.

09:20    21            Now, our position is that to the extent that his argument

22   exists under *Klein*, that it's been well accounted for in terms

23   of the total value of these projects.   We are not saying that

24   the Walnut Grove Youth Correctional Facility wasn't built or

25   that the East Mississippi Correctional Facility wasn't built,

1    but we have already backed out that these contracts were worth

2    $31,926,828.41, and the other one $28,882,063.  So we are

3    only -- the probation office is only assigning a very small

4    portion of that, which is that profit which was obtained by

5    virtue of the bribery that exists in this case, the underlying

6    bribery.  So we think there's adequate evidence in the record

7    and in the presentence investigation report which the Court can

8    take account of with regard to this particular issue.

09:21   9        As I said, the FBI agent is here if the Court needs

10   additional evidence, but it's not clear to me that that's

11   necessary under the circumstances of this case, and we think

12   that it has been adequately documented.

09:22  13        The information, Your Honor, as the Court knows, this has

14   been continued once because there are several other individuals

15   who are -- have their sentences pending before Judge Wingate,

16   and there have been hearings there, and we have sought to

17   obtain all the information we could to support the calculations

18   that the probation office has made.  The only information which

19   we were not able to obtain came from Sentinel, which, you know,

20   that's -- I'm just going to state that that's for another day,

21   the fact that they can have contracts all over the United

22   States and hide behind a London entity and refuse to give

23   information to us, but we will deal with that in a separate

24   matter.  We have sufficient information for the Court to assign

25   a calculation with regard to this case.

09:23   1          **THE COURT:**  All right.  Anything else you want to

2      add, Mr. Hightower?

09:23   3          **MR. HIGHTOWER:**  Briefly, just to address the point

4      that Mr. Golden raised, I think he is right to the extent he

5      said they have backed out the numbers such that all that

6      remains that they are using is the profit.  The problem is,

7      they are using all the profit.  And under Mr. Golden's logic,

8      construction contracts have no legitimate profit, and that's

9      just not -- that doesn't comport with reality, Your Honor, and

10     it would be the government's obligation to demonstrate what

11     part of that profit, how much of it too much is attributable to

12     the actual bribe as opposed to profit on any other job.

09:23  13          I don't think there is a contractor in Mississippi that

14     would be willing to build a 30 million-dollar facility without

15     anticipation of some legitimate profit.  And to the extent that

16     the government can demonstrate that it was profit too much,

17     well, then we will live with that, but I haven't seen anything,

18     any evidence of that.

09:24  19          **THE COURT:**  All right.  Thank you.  Well, I, of

20     course, have reviewed the presentence investigation report.  It

21     is a very thorough report, contains a lot of information in it,

22     and I do think all the facts are there to allow the Court to

23     make a meaningful and informed decision as to sentencing and as

24     to the objection.

09:24  25          And in this case, as the record reflects, the objection is

 1   to an enhancement in the guideline calculations.  So by way of

 2   review, essentially the guidelines in this case were calculated

 3   based upon the defendant's plea of guilty to a violation of

 4   Title 18, United States Code, Section 666(a)(2), which is

 5   essentially bribery concerning programs receiving federal

 6   funds.  According to the guidelines manual, the applicable

 7   guideline is Section 2C1.1.  And according to that guideline

 8   provision, the base offense level, if the defendant is not a

 9   public official, which is Mr. Simmons' case, is a 12.

09:25    10   Then there's a two-level enhancement which was applied in

11   this case if there was more than one bribe involved, and as has

12   been stated here, this case involves several contracts and

13   payments on separate occasions pursuant to those contracts by

14   Mr. Simmons to Mr. Epps, and in one case to a former Harrison

15   County supervisor.  So the two-level enhancement was applied.

09:26    16   And then we get to the meat of the coconut, the basis of

17   the objection here, which is the 18-level increase which was

18   then added pursuant to Section 2C1.1(b)(2), which reads as

19   follows:  That if the value of the payment, the benefit

20   received or to be received in return for the payment, the value

21   of anything obtained or to be obtained by a public official or

22   others acting with a public official or the loss to the

23   government from the offense, whichever is greatest, if that

24   figure exceeds $6,500, then the offense level should be

25   increased by the number of levels from the table found at

1   Section 2B1.1 for the corresponding amount.  And in this case,

2   the probation officer, in calculating the guidelines, based on

3   the evidence produced by the companies themselves were that AJA

4   Management and Technical Services earned a profit of

5   $494,445.02, White Construction Corporation had a profit of

6   $5,864,453.41, Health Assurance profited $403,863, and this was

7   for the Harrison County Adult Detention Center medical

8   contract, for a total profit of $6,762,721.43.

09:28    9        And according to the table at Section 2B1.1 of the

10   guidelines, the range where this would fall would be between

11   three and a half million and nine and a half million dollars,

12   and in that case, the Court is directed to apply the 18-level

13   enhancement which is at issue here.

09:28   14        I would observe, as has been stated, that there was

15   another contract involving Sentinel where no information has

16   been produced.  So to the extent there was any profit in that

17   contract, that has not been counted against Mr. Simmons in this

18   case because the information was simply not available.

09:29   19        After that, then pursuant to Section 2C1.1(b)(3), because

20   the offense involved an elected public official or any official

21   in a high level decision-making or sensitive position, in this

22   case former Commissioner Epps, there's a four-level increase

23   added.  So the probation officer totaled all of those up and

24   came to a final total of an offense level of 36, and then Mr.

25   Simmons received a three-level reduction for acceptance of

 1   responsibility pursuant to Section 3E1.1 of the guidelines,

 2   which places him then at an offense level of 33, with a

 3   criminal history category of I, and that yields a guideline

 4   range of imprisonment of 135 to 168 months.  However, in this

 5   case, because the count of conviction has a statutory cap of

 6   ten years, the sentence cannot exceed 120 months.  So that

 7   makes the guideline range 120 months.

09:30    8        So the issue, then, is the 18-level enhancement and

 9   whether that was properly applied.  It does not appear to the

10   Court that there's any objection or dispute in the record as to

11   the monetary calculations themselves as to how the numbers were

12   derived and how the profits were calculated, and so I do find

13   that those numbers are correct and have been properly

14   calculated and are supported by the record.

09:30   15        So that leaves, then, the center of the dispute, which is

16   whether or not, given that there was a total profit of some

17   $6.7 million on these contracts, whether it's appropriate to

18   use that approach to apply an 18-level enhancement.

09:31   19        I think one of the arguments that Mr. Hightower is making

20   is as it relates to the *Klein* case.  Also, it appears that part

21   of the argument is whether or not there is a loss to the

22   government here and whether that should be the measure of

23   calculating the guidelines and that because his position is

24   that there has been no showing of any illegitimate profit, that

25   the loss really is zero, and therefore there shouldn't be an

18-level enhancement.  And that is, true enough, something the

Court of Appeals has suggested also in a recent case, *United*

*States versus Harris,* 821 F.3d 589 from 2016.  So under that

approach, if the Court were to find that the fair market value

of the services rendered to the government was equal to the

total price of the contracts, meaning that the services

rendered were provided and that because there's a natural

assumption that there will be profit in any contract, the

profit was legitimate, then there ought not to be an increase

in the offense level as the guidelines have been applied in

this case.

09:32      The problem is that Section 2C1.1(b)(2) makes it clear

that loss to the government is just one of four possible ways

to calculate the sentencing enhancement.  So even if the Court

were to find that the loss to the government is zero, the

guidelines instruct the Court to use the greater of these four

possible measures, loss to the government being only one of

those, another being the value obtained by the public official,

which in this case would be totaling up the bribes earned by

the public officials who received them, or the value of the

payment, which would then be the dollars paid out by Mr.

Simmons himself, or the net benefit received in exchange for

the bribe.  And that's the approach the probation office

determined yielded the greatest number, and therefore it was

used in calculating the guidelines here.

09:34   1   In *United States versus Landers,* 68 F.3d 882, Fifth

2 Circuit 1995, the net benefit calculation under this guideline

3 was found to be equal to the total contract price less the

4 direct cost incurred in performance of the contract, which is

5 akin to the calculation the presentence report appears to have

6 made in calculating the net value of the benefits received by

7 the contractors.  So given the information that was produced

8 and available, which is the best evidence in the Court's view,

9 the determination was made that -- and consistent with the

10 example given in the guideline application notes, the costs

11 were subtracted from the total payment on the contract to yield

12 the net benefit to the companies, which was the profit.  And

13 that's where the $6.7 million figure came from.

09:35   14   As stated, the argument that Mr. Hightower is making is

15 based on the *United States versus Klein* case, which was a

16 health care fraud case, which, among things, stated that a

17 defendant is entitled to a credit discounting the actual losses

18 from fraudulent claims by the legitimate value of medications

19 or services the insurer or the government would have had to pay

20 for anyway, even if the fraud had not occurred.  So the

21 following logic, as Mr. Hightower has argued, being that the

22 government or the entities who were paying on these contracts

23 to these companies would have had to pay this amount anyway in

24 the legitimate course of business because profit is part of any

25 kind of a contract of this nature, so, therefore, there would

1    need to be some evidence of what any kind of illegitimate

2    profit or inflated profit, improperly inflated profit, would

3    have been to correctly measure the net gain in this case, and

4    he argues that there has been no evidence to distinguish

5    between legitimate and illegitimate profit.

09:37    6         The Court is of the view that a reading of the guidelines

7    in the cases instruct the Court to use whichever is the

8    greatest of the four alternative calculations.  In application

9    note three to Section 2C1.1, the Court's view makes it clear

10    that any calculation of the benefit received is the net value

11    of the benefit.  I do not read the -- I understand the

12    distinction Mr. Hightower was trying to make, but I don't see

13    that distinction drawn in the application note or the guideline

14    or in the cases that address it.

09:38    15         And as has been stated in the guidelines at 2B1.1 and in

16    *United States versus Roussel,* 705 F.3d 184, Fifth Circuit 2013,

17    the Court does not have to determine the loss or benefit with

18    precision but need only determine a reasonable estimate of the

19    loss or benefit based on the information available.  I think we

20    have a reasonable estimate here based on the information

21    available.

09:38    22         So my reading of the guideline is that this distinction

23    that's being suggested by Mr. Hightower is not stated there,

24    and I'm not of the view that it's appropriate for the Court to

25    read a distinction in there that doesn't exist.

09:38  1          Now, I think there's some support for that in the case law
2      as well.  In the *Harris* case, for instance, which the Court
3      stated previously, the defendant, Mr. Harris, was employed by a
4      firm, and he was the one who facilitated the bribe and obtained
5      the contract, but it was the companies, the third parties, that
6      were the true beneficiaries of the government contracts, and
7      Harris himself was not personally enriched in any way beyond
8      his salary as an employee.  However, the Fifth Circuit still
9      stated in that case that it was appropriate to attribute the
10     entire value of the fraudulently obtained contracts to Harris
11     personally as the starting point for the loss calculation.

09:40  12         Now, of course, that was a case dealing with loss.  And
13     the Court -- the Fifth Circuit remanded for resentencing in
14     that case and stated that the correct loss calculation would be
15     the net value of the contracts equal to a total value of the
16     contracts awarded to the companies less the fair market value
17     of services rendered in performance of the contracts.

09:40  18         Now, these could be read, as the defendant has argued, to
19     suggest that if you count legitimate profit as part of the cost
20     of doing business, the loss could be calculated as zero.  But
21     again, the PSR does not recommend or suggest that the sentence
22     be enhanced on the basis of a loss to the government.  It's on
23     the calculation of the net benefit received.  And it does cite
24     the application note that Mr. Hightower mentioned.

09:41  25         The example given is that a $150,000 contract on which

1       $20,000 profit was made was awarded in return for a bribe.  The

2       value of the benefit received is $20,000.  That's the quote

3       from application note three to Section 2C1.1.  As I stated

4       earlier, I do not see any distinction drawn in there between

5       what portion of the profit was legitimate and what portion was

6       not.  It simply speaks in terms of the profit.

09:41   7           And the Fifth Circuit has interpreted this question and

8       held that the net value of the benefit received attributable to

9       a defendant who obtains contracts as a result of bribery is

10      measured from deducting direct costs from the gross value

11      received and defining direct costs as all variable costs that

12      can be specifically identified as costs of performing a

13      contract.  That is in the *United States versus Landers* case

14      cited earlier.  Also, *United States versus Griffin*, 324 F.3d

15      330, a 2003 case, which cited *Landers* and found that the

16      expected benefit to the defendant sentenced for bribery was the

17      expected profit from tax credits obtained by means of the

18      bribe.

09:42   19          Again, none of these authorities make a distinction

20      between what portion of profit may have been legitimate and

21      what portion may have been inflated.  *Landers* seems to speak

22      fairly clearly in terms of calculating the number by

23      identifying the costs of performing the contract and then

24      subtracting that from the gross value received, which would be

25      the overall dollar figure of the contract.

09:43   1           It is interesting and I think persuasive to note that

2     other circuits have followed the Fifth Circuit's approach in

3     *Landers* in situations where illegal bribes were paid in order

4     to obtain what would otherwise be legitimate contracts.  For

5     instance, the Third Circuit in the 2010 case, *United States*

6     *versus Lianidis,* 599 F.3d 273, followed the Fifth Circuit's

7     approach in *Landers* explicitly and said that the benefit

8     received under Section 2C1.1 is the net value minus direct

9     costs accruing to the entity on whose behalf the defendant paid

10     the bribe.

09:43  11           Fourth Circuit in the *United States versus Harvey*,

12     532 F.3d 326, 2008, finding that the benefit received was the

13     eight-percent profit margin identified in the federal contract.

14     *United States versus Devegter*, 11th Circuit 2006, 439 F.3d

15     1299, following *Landers*, calculated the net value of the

16     benefit received in a case arising from bribery in order to

17     obtain a county bond refinance.  *United States versus Sapoznik*,

18     161 F.3d 1117, Seventh Circuit 1998, interpreted the relevant

19     benefit received under Section 2C1.1 to be the profit made on

20     the contract rather than the gross value of the contract.

09:44  21           Finally, the Second Circuit, *United States versus Glick*,

22     142 F.3d 520, calculated improper benefit as the gross value of

23     the commissions received as a result of a bribe, less any

24     direct costs incurred by the defendant.

09:45  25           So under this approach, the Court is of the view that the

1   presentence report's calculations adhere to the Fifth Circuit's

2   method of interpreting this guideline when talking about the

3   net value of the benefit received.  And, again, in all of these

4   cases, the Court does not see any distinction made between what

5   portion of the profit may have been normal expected profit and

6   what portion may have been inflated or illegitimate.  So while

7   I understand the reasoning behind the defendant's argument, it

8   does not appear to be supported by the text of the guideline,

9   the application notes or the relevant case law.

09:46   10      I would also observe that there have been cases in which

11   the Fifth Circuit has attributed all of the profits earned by

12   an employer company to a defendant employee sales

13   representative who had obtained contracts for the employer by

14   means of bribery rather than limiting the value of the benefit

15   received to the kickbacks accepted by the defendant personally

16   or the value of the bribes themselves, and that was the *Landers*

17   case.  *Harris*, which the Court has discussed previously, is

18   another example where the value of the contracts awarded to the

19   defendant's employer served as the baseline for the

20   calculations, even though the defendant himself was not

21   enriched in any way beyond his salary.

09:46   22      So those fact patterns speak to what we have here, which

23   is not exactly the same but similar in the sense that Mr.

24   Simmons was not employed by any of these companies, but he was

25   a consultant for them, an independent contractor, if you will,

1     and procured these contracts on their behalf.

09:47     2          Other circuits have taken this approach as well and have

3     attributed the profits earned by a defendant's employer to the

4     individual defendant who paid the bribe in order to benefit the

5     employer.  The Fourth Circuit did that in the 2012 case *United*

6     *States versus Hamilton*, 701 F.3d 404, finding that the value of

7     the benefit received was the amount of public funding secured

8     by the defendant legislator on behalf of a state university in

9     exchange for his employment by the university rather than the

10    salary received by the legislator.  *United States versus Cowen*,

11    171 F.3d 796, Third Circuit, 1999, finding that a defendant

12    salesman's sentencing enhancement should be based upon the net

13    value derived from contracts obtained by the employer on whose

14    behalf the defendant had paid the bribes rather than on the

15    value of the bribes themselves or the money personally pocketed

16    by the salesman.

09:48    17          So taking all of that into consideration and based upon

18    the evidence of record here, I'm of the view that the weight of

19    authority, not just in the text of the guidelines themselves

20    but also in the Fifth Circuit and in other circuits, is that

21    the approach taken by the probation officer in this case with

22    respect to this sentencing enhancement is in accordance with

23    the law and is the appropriate method.  So for those reasons,

24    the objection will be overruled.  And that will be the judgment

25    or ruling of the Court on the objection.

09:49   1       Based on the Court's ruling, then, the guideline

2   computations will be as follows:  The total offense level would

3   be a 33.  The criminal history category would be a I.  As I

4   stated earlier, the guideline range for imprisonment would be

5   135 to 168 months, but that is statutorily capped at 120

6   months.  So the guideline range would be 120 months.

09:49   7       The supervised release range would be one to three years.

8   The defendant would not be eligible for probation.  The fine

9   range would be $17,500 to $175,000.  Restitution is not

10   applicable.  And there would be a $100 special assessment.

09:49   11       Do the parties agree that those are the correct guideline

12   computations based upon the Court's rulings on the objection?

09:49   13       **MR. GOLDEN:**  On behalf of the government, yes, Your

14   Honor.

09:49   15       **MR. HIGHTOWER:**  Based upon the Court's rulings, yes,

16   Your Honor.

09:50   17       **THE COURT:**  The Court will adopt the presentence

18   report and addenda in their entirety as the Court's findings of

19   fact, along with the additional findings made here today.  I

20   also have some matters, then, that have been submitted to me by

21   the government.  Anything that needs to be added on that point,

22   Mr. Golden?

09:50   23       **MR. GOLDEN:**  No, Your Honor, not that I'm aware of.

24   They speak for themselves.

09:50   25       **THE COURT:**  All right.  Mr. Hightower, I think you're

1    also conscious of what I'm referring to.  Any comment on that

2    at this point?

09:50    3            **MR. HIGHTOWER:**  I am, Your Honor.  Of course, the

4    document, when filed, is restricted, but I have spoken with Mr.

5    Golden this morning, and I am aware of the magnitude in terms

6    of guidelines, to the extent it affects the guidelines, I'm

7    aware of the magnitude associated with that motion.

09:50    8            **THE COURT:**  Okay.  I have considered that, and there

9    have been materials submitted to the Court for in camera review

10   which I have considered as well, and I'm of the view that that

11   is an appropriate adjustment, so the Court will make it.  And

12   based on that, then, the guidelines would be adjusted.  And by

13   my calculation, the result would be a total offense level of a

14   29, criminal history category of a I.  The imprisonment range

15   would then be 87 to 108 months.  Supervised release range would

16   be one to three years.  Defendant would still not be eligible

17   for probation.  The fine range would be $15,000 to $150,000.

18   Restitution is not applicable, and there's a $100 special

19   assessment.  Do the parties agree that those would be the

20   correct adjusted guidelines?

09:52   21            **MR. GOLDEN:**  Yes, Your Honor.

09:52   22            **MR. HIGHTOWER:**  Yes.  Under the Court's rulings, yes,

23   Your Honor.

09:52   24            **THE COURT:**  All right.  Mr. Simmons, you have what is

25   known now as the right of allocution.  That's your opportunity

1    to address the Court and say anything you would like to say on

2    your own behalf.  You may address the Court yourself if you

3    wish, or if you would prefer that your attorney speak for you,

4    that's fine, too.  It's entirely up to you.  But I would like

5    you to come forward, please, and go ahead and take the oath.

6    If you do choose to speak, I will require you to be under oath.

7    Please raise your right hand, sir.

09:52    8        (DEFENDANT SWORN).

09:52    9        **THE COURT:**  Anything you would like to say, Mr.

10    Simmons?

09:52    11        **THE DEFENDANT:**  Yes, Your Honor.  First, I want to

12    apologize to the Court, to my wife Glenda, who is not here, and

13    to the family and all the people that have been affected by my

14    lack of judgment and disregard.  I think in terms of my career,

15    the 36 years that I have been a professional, the last several

16    years is not the true reflection of who I am, a country boy

17    growing up in Amite County and coming to the Mississippi Gulf

18    Coast for the last 35, 36 years.  So I do take responsibility

19    for lack of judgment, and I apologize to all that have -- will

20    be affected by it.  I just pray upon the Court that given all

21    of these things and the totality of what I've been engaged and

22    involved in over the years is not what has occurred in the most

23    recent past.  Thank you.

09:53    24        **THE COURT:**  Thank you.  Anything you want to add, Mr.

25    Hightower?

09:53   1          **MR. HIGHTOWER:**  Your Honor, I would like to add, and

2       we included this in our response to the presentence

3       investigation report, I do think that in addition to what Mr.

4       Simmons has indicated, that while the government's motion

5       regarding his -- Mr. Simmons' efforts is greatly appreciated,

6       that I think the Court knows from what it has reviewed in

7       camera that that -- it was -- the assistance was serious, and

8       it was substantial and at great risk to Mr. Simmons,

9       particularly in light of what we know today.  I don't think

10      that, you know, that Mr. Simmons ought to escape punishment in

11      any way, but what I do think is that this Court has to fill in

12      where the guidelines leave off, and I don't think that a

13      sentence at 87 to 108 months would be appropriate in Mr.

14      Simmons' case.  I think that under the other factors that the

15      Court can consider, that a greater reduction would certainly be

16      warranted.

09:55   17         I think that, in addition to that, there have been public

18      officials that have been punished already and others charged

19      with inappropriate conduct, and while that is not binding on

20      this Court at all, I think it is worthy of consideration in

21      terms of what would be appropriate.  And I think that the Court

22      ought to consider that when it renders its final decision with

23      respect to Mr. Simmons' punishment.  Thank you, sir.

09:55   24         **THE COURT:**  Anything you want to add on behalf of the

25      government, Mr. Golden?

09:55  1          **MR. GOLDEN:**  No, Your Honor.

09:55  2          **THE COURT:**  All right.  I believe there was a

3    recommendation for a sentence in a particular range of the

4    guidelines.

09:55  5          **MR. GOLDEN:**  Well, the government stands by its

6    original recommendation, Your Honor, which is the bottom

7    25 percent of the guideline range.  Yes.

09:56  8          **THE COURT:**  All right.  For the record, I find that

9    recommendation would be appropriate in light of the

10    circumstances of this case and the defendant's lack of criminal

11    history and the information contained in the presentence

12    report.  So for the record, the Court accepts the government's

13    recommendation of a sentence in the lower 25 percent of the

14    guideline range.

09:56  15         Mr. Simmons, one other thing I need to explain to you,

16    sir.  Part of your plea agreement involved a waiver of your

17    right to appeal your conviction and sentence.  If for some

18    reason, however, you were going to try to appeal or wish to try

19    to appeal anyway, I need to explain to you that you would have

20    14 days from the date I enter a written judgment to file any

21    such appeal.  You can ask your attorney to file it for you.  If

22    he will not or cannot, then you can file it yourself.  All you

23    have to do is write out on a piece of paper that you want to

24    appeal and submit it to the clerk of the court.  But you need

25    to understand you only have 14 days to do that from the time I

1    enter a written judgment.  Do you understand that, sir?

09:57   2                    **THE DEFENDANT:**  Yes, Your Honor.

09:57   3                    **THE COURT:**  Further, if for some reason you were

4    unable to pay the cost of an appeal, you could request to

5    appeal in forma pauperis, which means to appeal and have the

6    costs waived.  Again, all you would need to do is submit a

7    written request to the clerk's office to that effect.  Do you

8    understand that?

09:57   9                    **THE DEFENDANT:**  Yes, I do, Your Honor.

09:57   10                   **THE COURT:**  All right.  You may be seated.  Thank

11   you.

09:57   12        This matter is before the Court for sentencing, and I have

13   considered the record in this case, the presentence

14   investigation report, the addenda, the advisory guideline

15   calculations and the record made here today.  I must also take

16   into account the statutory sentencing factors found at Title

17   18, United States Code, Section 3553.  In this case I find the

18   following factors are relevant, the nature and circumstances of

19   the offense, the history and characteristics of the defendant.

09:58   20        It is true that the defendant has a lengthy history of

21   employment, apparently distinguished up until his involvement

22   in this offense, has no criminal history.  Those are factors

23   the Court considers.  The circumstances of the offense are one

24   that involve payment of bribes to public officials, two

25   different ones, for a number of contracts which, according to

1    the indictment in this case or the bill of information in this

2    case, stretched over a period of years over the entire course

3    of conduct, beginning sometime in or about 2005 until around

4    August of 2014.  So that's another factor the Court considers,

5    the length of time that this went on.

09:59    6        The sentence needs to reflect the seriousness of the

7    offense.  These types of offenses are very serious.  They

8    involve conduct that calls into question the integrity of our

9    public institutions, and for that reason, the Court must take

10    them very seriously as well.  They are offenses that are often

11    difficult to detect and can be difficult for the government to

12    bring to court.  So that's another factor.

10:00    13        The sentence needs to promote respect for the law and

14    afford a just punishment.  This type of conduct reflects a lack

15    of respect for the law and its public institutions and for the

16    integrity of public officials, often, as in this case, in an

17    effort to profit one's self.  While Mr. Simmons certainly did

18    not receive $6 million out of this scheme, he did earn some

19    consulting fees for which he would likely not have been

20    eligible were it not for the access he was able to take

21    advantage of to procure these contracts for his clients.

10:01    22        It is about punishment as well.  Punishment is part of

23    sentencing, but it's about a just punishment.  Punishment needs

24    to be fair and fit the circumstances of the offense and the

25    history and characteristics of the defendant.  It needs to

1 afford adequate deterrence to criminal conduct.  This type of

2 conduct needs to be deterred.  Certainly Mr. Simmons needs to

3 be deterred from engaging in this type of conduct ever again,

4 but it also needs to serve as a deterrent effect for others out

5 there who may be engaged or inclined to engage in this type of

6 behavior.

10:02 7  It needs to protect the public.  While these certainly are

8 not violent offenses, and while Mr. Simmons is not a violent

9 person or a physical threat to anyone, they are a threat to the

10 public in the sense that they threaten the integrity of our

11 democratic institutions of government.  So the Court takes all

12 of those factors into consideration in fashioning a sentence in

13 this case.

10:02 14  Further, I think Mr. Hightower intimated this, that

15 another factor in sentencing is to avoid unwarranted

16 disparities in sentencing.  Of course, Mr. Simmons is the only

17 defendant in this case, so as among defendants in this case,

18 there's no measure by which the Court can look at that.  I am

19 aware of sentences in other cases.  Of course, every case is

20 very different.  The amounts involved are different.  And

21 sometimes in reaching plea agreements, plea bargaining, that

22 pleas are reached which allow someone to enter a plea before an

23 indictment is returned, which might include even more conduct

24 in an effort to resolve the case quickly.  That can affect

25 sentences.

10:03   1          Certainly I'm aware of the broader case that was

2    referenced earlier before Judge Wingate.  I don't know any of

3    the specifics about it.  Of course, as far as this Court is

4    aware, none of those individuals have been sentenced yet, so I

5    have nothing to measure against as far as those individuals go,

6    although it seems fairly evident to the Court that certainly as

7    between Mr. Simmons and Mr. Epps, the scope of the conduct

8    involved is likely far, far broader as it relates to Mr. Epps

9    than Mr. Simmons.  But again, it is unknown at this time what

10   loss amounts might be attributed to Mr. Epps or what other type

11   of consideration he might receive based upon his conduct.

10:04   12         So I'm aware of that issue, as Mr. Hightower has

13   mentioned, but also somewhat constrained by some of the factors

14   that I've just mentioned in terms of trying to approximate what

15   would be the right sentence as it relates to others.  But I do

16   have enough information before me to fashion a sentence in this

17   case.

10:05   18         And having considered the advisory guideline calculations

19   and other sentencing factors found at Title 18, United States

20   Code, Section 3553, the Court will impose sentence as follows.

21   It is hereby the judgment of the Court that the defendant,

22   Robert Simmons, is hereby committed to the custody of the

23   Bureau of Prisons for a term of 87 months as to Count 1 of the

24   indictment.  The Court is of the view that under the nature and

25   circumstances of this case, a sentence at the bottom of the

1      guideline range is appropriate and strikes the appropriate

2      balance, given the facts of this case.

10:06   3          It is further ordered that the defendant shall pay a fine

4      in the amount of $10,000, which is payable immediately and

5      during the term of incarceration.  The fine is a downward

6      departure from the prescribed guideline fine range and is based

7      upon the defendant's ability to pay.  The Court finds the

8      defendant does not have the ability to pay interest on the

9      fine.  The interest on the fine will be waived.  Any balance

10     remaining on the fine upon release from imprisonment shall be

11     paid in monthly installments of no less than $200 per month.

12     In ordering this nominal payment, the Court recognizes the full

13     amount may not be paid in full prior to the termination of

14     supervised release.  In the event that the full amount is not

15     paid prior to the termination of supervised release, the

16     defendant is ordered to enter into a written agreement with the

17     financial litigation unit of the U. S. Attorney's Office for

18     payment of the remaining balance.

10:07   19         In addition, the value of any future discovered assets may

20     be applied to offset the balance of criminal monetary

21     penalties.  The defendant may be included in the Treasury

22     Offset Program allowing qualified federal benefits to be

23     applied to offset the balance of criminal monetary penalties.

10:07   24         Upon release from imprisonment, the defendant shall be

25     placed on supervised release for a term of three years as to

Count 1.  Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report to the probation office in the district to which he is released.  While on supervised release, the defendant shall comply with the mandatory and standard conditions which are listed on the judgment and commitment order, and he shall not possess a firearm.

10:07    The record reflects that the defendant does not have a history of alcohol abuse or drug abuse.  Therefore, the drug testing condition will be suspended.

10:07    In addition, the following special conditions are imposed: Number one, the defendant shall provide the probation office with access to any requested financial information.  Number two, the defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation office unless the defendant is in compliance with the installment payment schedule.  These conditions are imposed in light of the fine imposed in this matter to facilitate payment of the fine and compliance with the defendant's financial obligations.  It is further ordered that the defendant pay a special assessment of $100, which is due immediately.

10:08    The Court notes that if it erred in treatment of any of the guidelines in this case, the Court would have imposed the same sentence as a variance or nonguideline sentence based upon its analysis of the Section 3553 factors as stated earlier.

10:08   1        The Court recommends that the defendant be designated to

        2   an institution closest to his home for which he is eligible for

        3   the purposes of visitation.  And the defendant is to

        4   voluntarily surrender to the institution designated by the

        5   Bureau of Prisons within 72 hours of designation by the Bureau

        6   of Prisons but no later than 60 days from the date of this

        7   judgment.  That will be the judgment of the Court.

10:09   8        Anything further?

10:09   9            **MR. HIGHTOWER:**  No, Your Honor.

10:09  10            **MR. GOLDEN:**  No, Your Honor.

10:09  11            **THE COURT:**  This matter is adjourned.  We will take a

       12   short recess.

       13                    (SENTENCING CONCLUDED)

       14

       15

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25

1

2

3                        CERTIFICATE OF COURT REPORTER

4

5          I, Teri B. Norton, RMR, FCRR, RDR, Official Court

6    Reporter for the United States District Court for the Southern

7    District of Mississippi, appointed pursuant to the provisions

8    of Title 28, United States Code, Section 753, do hereby certify

9    that the foregoing is a correct transcript of the proceedings

10   reported by me using the stenotype reporting method in

11   conjunction with computer-aided transcription, and that same is

12   a true and correct transcript to the best of my ability and

13   understanding.

14         I further certify that the transcript fees and format

15   comply with those prescribed by the Court and the Judicial

16   Conference of the United States.

17

18

19

20        s/ *Teri B. Norton*
          TERI B. NORTON, RMR, FCRR, RDR
21        OFFICIAL COURT REPORTER

22

23

24

25